IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRANDI WIGGINS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1:23-00226-JB-N |
| JAMES WARD, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendants Conecuh County Sheriff Randy Brock and Conecuh County Jail Administrator James Ward ("Defendants"). (Doc. 41). The Motion has been fully briefed and is ripe for resolution.[1] Upon due consideration, and for the reasons set out herein, the Court concludes the Motion is due to be GRANTED.

**I.    BACKGROUND**

In their operative Second Amended Complaint (Doc. 39), Plaintiffs Brandi Wiggins and Sameria Straughn ("Plaintiffs") bring one cause of action against Defendants for supervisory liability under § 1983 for deliberate indifference. At all material times, Ward was Administrator of the Conecuh County Jail ("Jail") and Defendant Brock was the Conecuh County Sheriff. (*Id.*). Plaintiffs claim against Defendants relates to alleged sexual assaults committed by Defendant Smith while they were pretrial detainees in the Conecuh County Jail. (*Id.*).

---

[1] Plaintiffs' Motion to Strike Defendants' Reply Brief is DENIED for the reasons stated in Defendants' opposition thereto. (*See* Docs. 51 and 52).

1

Plaintiffs allege Ward was aware of Department of Corrections' regulations prohibiting sexual contact by a corrections officer with inmates, whether forced or consensual, and that he was responsible for establishing policies and for training and enforcing the law as it applies to sexual conduct towards inmates by correctional officers.  Plaintiffs also allege Ward possessed the authority to discipline correctional offices under his command for violations of policy, and that he had reprimanded, suspended, terminated, and caused the arrest of corrections officers who violated contraband and drug rules and regulations.  Plaintiffs allege Ward was employed at the Escambia County Jail before becoming the Conecuh County Jail Administrator. He brought a correctional officer to the Jail who had been involved in inappropriate sexual misconduct with inmates of the Escambia County Jail, including an Officer Bradley who had inappropriate sexual contact with an inmate resulting in pregnancy.  Another was an Officer Tanner who had also been involved in inappropriate sexual misconduct.  The conduct of Bradley and Tanner were known to Ward.  The same inappropriate sexual misconduct continued under Ward at the Conecuh County Jail.  Ward was aware an Officer Mixon sold and sent nude photos to male inmates.  Ward and three outside trustees watched cameras in Ward's office while two federal inmates were strip searched.  All of this conduct took place before or around the same time as the alleged conduct involving Plaintiffs.

Plaintiffs allege Brock supervised Ward, and that Brock was aware of Department of Corrections' regulations prohibiting sexual contact by a corrections officer with inmates in the Jail, whether forced or consensual.  Plaintiffs allege Brock was responsible for the establishment of policies and for training and enforcing the law as it applies to sexual conduct towards inmates by correctional officers.

Plaintiffs allege Smith sexually assaulted Straughn twice and Wiggins once, in April and May of 2022.[2] Plaintiffs' supervisory liability claim against Defendants is based generally on their allegation of Defendants' investigation of a prior accusation by another inmate of sexual intercourse with Smith in the Jail. More specifically, they allege Smith supervised and sexually harassed a federal inmate trustee, which culminated in coerced intercourse and the inmate and Smith exchanging sexually explicit texts, photographs and videos. The coerced intercourse occurred on February 21, 2022. Additionally, the inmate was required to strip in the presence of Conecuh County corrections officers.

Shortly after the sexual intercourse between Smith and the other inmate, and before Smith sexually assaulted the Plaintiffs, an Officer Dees found the inmate's cell phone during a shake-down and she was taken to Ward's office. The inmate told Ward, Brock, Nurse Pam Merrill, and Dees of sexual misconduct, including sex with Smith. In addition to the inmate's accusation of sexual intercourse with Smith, Defendants were shown the sexually explicit videos, photos, and text messages exchanged between her and Smith that were on her confiscated cell phone. The inmate prepared a statement of the coerced intercourse and the other sexual misconduct. Ward and Brock nevertheless allowed Smith to continue to work in the Jail and supervise trustees. Plaintiffs allege Smith's sexual assaults on them would have not occurred if Ward and Brock had taken appropriate action. The mother of Smith's child was also a correction officer and retaliated against the inmate by strapping her to a chair and pepper spraying her where it could be witnessed by all.

---

[2] Count One of the Second Amended Complaint is against Defendant Smith for committing the alleged sexual assaults. (Doc. 39 at PageID.201). Smith is not a party to the instant Motion to Dismiss.

Straughn was taken into custody by officers of the Evergreen Police Department and/or Conecuh County Sheriff's Deputies, on January 23, 2022, for theft. She was held in the Conecuh County Jail. She was made a trustee and head cook sometime in March. In April, Straughn informed Officer Bradley that she needed some cleaning supplies, and was told to go to Smith because he had the key to the supply closet. Smith told Straughn she could get the supplies, and she started toward the supply closet. Smith talked with Straughn and told her he worked out in a gym upstairs. He asked Straughn if she wanted to see it, and she said that she did. After they got up the stairs, Straughn turned around to walk down the stairs and Smith pushed her down on a weight bench and began to sexually assault her. Straughn begged him to stop, but he would not. When he finished, she ran down the stairs and grabbed the cleaning supplies and took them to the kitchen and told another inmate to take over. The inmate asked Straughn if she was ok, and she replied she was. Straughn then went directly to the dorm and took a shower.

In the first week of May 2022, Smith sexually assaulted Straughn again. She saw Smith in booking and told him she needed trash bags, and he told her to get them. Straughn attempted to avoid Smith by waiting at the door, but he made her come into the supply closet. Straughn entered the supply closet and bent down to get the trash bags. Smith then forced her down over a box of peanut butter and sexually assaulted. This second assault was more violent than the first. Smith told Straughn that we would lock her down and cause her to lose her head cook job if she reported him.

In June 2022, Ward called Straughn to his office about a phone call. She asked him why he was calling her in about a phone call when he needed to worry about officers sexually assaulting inmates again. Ward asked Straughn what she was talking about, even though he then knew

about the complaint by the other inmate. Straughn told Ward that Smith had sexually assaulted another inmate. However, she did not inform Ward that Smith had assaulted her because she was afraid, she would not be believed and because Smith had threatened her. A few weeks after this conversation with Ward, Straughn discovered Smith had sexually assaulted Plaintiff Wiggins. Straughn was present when Wiggins went to the storage room and showed Merrill a rag Smith wiped himself with after sexually assaulting Wiggins.

Wiggins was taken into custody on May 31, 2022, and held in the Jail for a parole violation. Wiggins was immediately made a trustee. That night, Wiggins was working in the kitchen when Smith ordered her into a closet to get cleaning supplies. Wiggins is hearing impaired but was not allowed to have her hearing aids while in the jail. Smith shut the door behind them, and Wiggins did not hear it. She had her back to the door. When Wiggins bent down to get bleach, Smith asked "now you are going to bend over in front of me?" She apologized and reached down again to get bleach. Smith then pushed down her pants, pushed her back down with his hand and sexually assaulted her. Smith then grabbed a rag, wiped himself, threw it at Wiggins, and told her to clean herself. She did so, then threw the rag in a bucket and went back to the kitchen. Wiggins was unsure to whom she should make a report because she perceived the correctional officers did not think there was a problem with inmate/officer relations. She was also aware of the retaliation committed against the other inmate.

Approximate three weeks thereafter, another inmate told Wiggins how Smith had made her feel by making inappropriate comments to her while she was with Merrill. Wiggins informed the other inmate about Smith's sexual assault of her. The inmate encouraged Wiggins to tell Merrill, and she did so. Wiggins, Merrill, Straughn, and two other inmates retrieved the rag used

5

by Smith. Dees took a statement and sealed the rag in a bag. Dees and Merrill asked Wiggins when the incident happened and discussed, in Wiggins' presence, prior accusations of sexual misconduct against Smith.

Wiggins' assault was reported to Ward and Brock.  Wiggins had a copy of her original statement.  She was transferred to the Escambia County Jail the next morning, and her statement was put into her property bag.  When Wiggins got her property back, the statement was no longer there.

Ward was aware of Wiggins' statement and evidence of the sexual assault, Smith's actions with the other inmate, and possibly other inappropriate sexual activity by Smith because it was common knowledge.  Ward admitted to Wiggins that he had taken no action against Smith because he had to protect his staff.  Wiggins told Ward his staff was supposed to protect her. Merrill then had her transported to a doctor.  While they were waiting, Wiggins was chained to a bench, where Bradley, who was fired from Escambia County Jail for having sex with an inmate, yelled at Wiggins and belittled her.[3]

Plaintiffs make unclear allegations regarding transfers occurring after Wiggins presented the rag to Merrill.  As best the Court can discern, Plaintiffs allege that shortly thereafter, Merrill was transferred to Clark County Jail.  Ward had previously transferred Merrill because of a correctional officer sexually assaulting a female inmate.  Ward moved her to Escambia County

---

[3] Smith has since been indicted for, among other charges, having violated "The Prison Rape Elimination Act" and Alabama Code Section 14-11-31.  The charges are for his sexual assault of Wiggins.  Brock arranged bond for Smith shortly after his arrest. The charges were pursued only due to the efforts of Merrill, Wiggins, Dees and other inmates to stop Smith.  Ward and Brock did nothing, but rather caused the assaults.

jail after she testified that an Officer Mims had sexually assaulted an inmate named Jessica Polk. She spoke with federal agents because Polk was a federal inmate.

After helping Wiggins retrieve the rag to be used as evidence against Smith, Ward bribed inmates with contraband if they would falsely accuse Merrill of inappropriate sexual misconduct in order to have her nursing license revoked. Merrill remains in constant fear of reprisal for her role in Wiggins' case.

## II.    STANDARD

In analyzing a Rule 12(b)(6) motion to dismiss, the Court accepts the facts pleaded as true and construes them in a light favorable to the non-moving party. *Quality Foods De Centro Am., S.A. v. Latin Am. Agribusiness*, 711 F.2d 989, 994-95 (11th Cir. 1983). All reasonable inferences are drawn in favor of the nonmovant. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Rule 8(a) requires a "'statement of circumstances, occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (citations omitted). Although a complaint does not need "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In *Ashcroft v. Iqbal*, the Supreme Court identified "two working principles" which underlie *Twombly*. 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [] Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (internal citations omitted).

### III. ANALYSIS

Defendants argue they are entitled to qualified immunity because (1) Plaintiffs have failed to plausibly allege Defendants, as supervisors, violated Plaintiffs' clearly established constitutional rights, and (2) Plaintiff's cannot point to clearly established law which provided Defendants with fair notice that their alleged conduct violated Plaintiffs' constitutional rights. (Doc. 42). Defendants, as government officials sued in their individual capacities under § 1983, "may assert qualified immunity as an affirmative defense if [they were] performing a discretionary function." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). It is Defendants' burden to establish they were engaged in discretionary functions. Plaintiffs do not contest Defendants were engaged in discretionary functions, and the Court finds that they were so engaged. Therefore, Plaintiffs bear "the burden of demonstrating that [Defendants are] not entitled to qualified immunity.'" *Id.* If Plaintiffs fail "to furnish sufficient factual allegations at this stage, the [Defendants are] entitled to judgment as a matter of law." *Newsome v. Lee County*, 431 F. Supp. 2d 1189, 1195 (M.D. Ala. 2006) (citing *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001)).

The United States Supreme Court set out a two-step inquiry to address a qualified immunity defense once discretionary function is established. This analysis is aptly described in *Kirkland v. Cnty. Comm'n of Elmore Cnty., Ala.*, 2009 U.S. Dist. LEXIS 21789 (M.D. Ala. Mar. 18, 2009):

> In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the Supreme Court delineated a two-step analysis for determining whether an officer, who was engaged in a discretionary function, is eligible for qualified immunity. The initial inquiry focuses on whether the plaintiff's allegations, if considered true, show that the officer violated a constitutional right. *Id.* The absence of a constitutional violation ends the inquiry. *Id.* However, where a court does find that an officer acted in an unconstitutional manner, the analysis turns to whether the right in question was clearly established so that the officer had fair warning that his conduct was constitutionally prohibited.

2009 U.S. Dist. LEXIS 21789 at *8-9. A right may be deemed "clearly established" as follows: "First, conduct may be clearly established as illegal through explicit statutory or constitutional statements. Second, certain authoritative judicial decision[s] may establish broad principles of law that are clearly applicable in a variety of factual contexts going beyond the particular circumstances of the decision that establishes the principle. Third, and most common, is the situation where case law previously elucidated in materially similar factual circumstances clearly establishes that the conduct is unlawful." *Griffin Indus.*, 496 F.3d at 1208-09 (internal quotations and citations omitted).

In this case, the Court must also address the fact that Plaintiffs' claim is based on supervisory liability. "The standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022). "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious

9

liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* at 1360.

Plaintiffs do not allege Defendants personally participated in the alleged unconstitutional conduct. Therefore, Plaintiffs must sufficiently allege facts of a "causal connection" between Defendants' actions and Plaintiffs' alleged constitutional deprivations. A causal connection may be established by alleging sufficient facts that show:

> 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so;
> (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or
> (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1297 (11th Cir. 2023).

Plaintiffs argue they have sufficiently alleged a "causal connection," based on the following characterizations of their allegations:

- Ward's responsibilities as Jail Administrator, the Prison Rape Elimination Act of 2003, and Alabama Department of Corrections Regulation Number 454.
- A pattern of conduct of condoning sexual misconduct by corrections officers and Ward.
- Ward's condoning sexual misconduct at the Escambia County Jail before coming to Conecuh County, and bringing to Conecuh County corrections officers who had been guilty of this conduct.
- Ward's bribing of inmates to falsely accuse Merrill of sexual misconduct.
- Retaliation for helping Wiggins collect the evidence needed to indict Smith for sexual misconduct.
- Ward's knowledge, prior to Smith sexual assaulting Plaintiffs, of Smith's sexual misconduct with the federal inmate, based on seeing sexually explicit videos and texts between the inmate and Smith and the inmates statement of Smith coercing her to make videos and texts and have sexual intercourse.

- Ward's admission to Wiggins that he has to protect his staff when she confronted him with sexual misconduct allegations.
- The mother of Smith's child retaliation against Wiggins.

(Doc. 49). Viewing these allegations in the light most favorable to Plaintiffs, and upon due consideration of the arguments in their opposition brief (Doc. 49), the Court concludes Plaintiffs have failed to sufficiently allege a "causal connection" as that is defined in Eleventh Circuit precedent.

A "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022). However, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Christmas*, 51 F.4th at 1355 (emphasis added) (citing *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014), and Clark v. Evans, 840 F.2d 876, 885 (11th Cir. 1988)). *See also, Holloman*, 370 F.3d at 1294 ("for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency."). In *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015), the court addressed plaintiff's allegations of four shootings that occurred one year prior to the subject shooting. Even assuming the four prior shootings were unconstitutional uses of excessive force, the court concluded they were not "obvious, flagrant, rampant and of continued duration" and did not establish a "causal connection between actions of the supervising official and the alleged constitutional deprivation." 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (citing *Hartley*, 193 F.3d at 1269).

Incidents that are remote in time and factually distinguishable from the alleged constitutional violation will not support a claim of widespread abuse. *See Lamego v. Mascara*, 2021 U.S. Dist. LEXIS 29939 (S.D. Fla. Jan. 7, 2021); *Whittier v. City of Sunrise*, 395 F. App'x 648, 650 (11th Cir. 2010); *Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2008) Conclusory allegations are insufficient. In *Hays v. Curry*, the court found plaintiff did not establish widespread abuse because he failed to allege "specific facts, dates, frequency, or number of reports, complaints, and/or lawsuits" of prior occurrences. 2016 U.S. Dist. LEXIS 149447, *11 (N.D. Ala. Oct. 28, 2016) (finding five prior incidents over a ten-year period insufficient to "support . . . an allegation of widespread practice.")

Plaintiff's allegations fail to establish that the constitution violations alleged here were obvious, flagrant, rampant and of continued duration. First, Plaintiffs rely on a number of allegations which are not relevant to the alleged constitutional deprivations, such as retaliation, bribery, and the conduct of other officers at a different jail. Further, much of the alleged prior occurrences of sexual misconduct are factually distinguishable from Smith's alleged forcible rapes of Plaintiffs. Under the law in the Eleventh Circuit, "a few isolated instances of harassment will not suffice." *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). *See also, Doe v. Sch. Bd. Of Broward Cty.*, 604 F.3d 1248 (11th Cir. 2010) (finding two isolated incidents of alleged sexual misconduct by a single teacher within a year was insufficient to prove widespread abuse), and *Christmas*, 51 F.4th at 1355-56 (knowledge of two prior instances of sexual assault by subordinate while on duty insufficient to establish widespread history of abuse or knew subordinate would commit assault outside the scope of his

employment). Plaintiffs have failed to sufficient allege a causal connection based on a history of widespread abuse.

Plaintiffs likewise fail to sufficiently allege a "causal connection" based on a "'policy or custom [that] resulted in deliberate indifference to constitutional rights.'" *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (quoting *Piazza*, 923 F.3d at 957)).[4] A "plaintiff can only allege the existence of a policy or custom by 'point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee.'" *Id.* "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). In *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023) ("Demonstrating a policy or custom requires showing a persistent and wide-spread practice.") (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (quoting *Depew*, 787 F.2d at 1499)).

Finally, Plaintiffs have failed to sufficiently plead facts which would support an inference that Defendants knew that Smith would sexually assault them and failed to stop him from doing so. Plaintiffs argue such knowledge is demonstrated by their allegations of the Defendants'

---

[4] In *Wade v. McDade*, 106 F.4th 1251, the Eleventh Circuit Court of Appeals addressed the question: "What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?" The Court provided the following answer:

1. First, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [*Farmer v. Brennan*, 511 U.S. 825,] 834 [(1994)] (citations omitted).

2. Second, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," *id.* at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." *Id.* at 844-45.

*Wade*, 106 F.4th at 1262.

investigation of Smith's alleged prior assault of another inmate. However, at the time of Smith's assaults of Plaintiffs, there is no allegation that the investigation had been concluded. There was no conclusion at that point that Smith had engaged in sexual intercourse with the inmate. The conclusive evidence at that point was that Smith and the inmate had sent one another sexually explicit texts, photographs and videos. This conclusive evidence did not include depictions of sexual intercourse between Smith and the inmate. Such a verbal or written statement is not conclusive evidence of Smith having intercourse with the inmate or of any arrangement between them. Plaintiffs allege only the inmate's accusation of sexual intercourse, after she had been caught with a contraband cell phone containing the texts, photographs, and videos which did not include sexual intercourse. At the time of Smith's alleged assaults of Plaintiff, the only conclusive evidence available to Defendants was that he and the inmate exchanged sexually explicit communications.[5]

Plaintiffs allegations are insufficient to show that Defendants knew Smith would sexually assault Plaintiffs, for purposes of establishing a "causal connection" to support a claim of supervisory liability for deliberate indifference. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993).

## CONCLUSION

Plaintiffs have failed to sufficiently allege a "causal connection" between Defendants' actions and Plaintiffs' alleged constitutional deprivations. Plaintiffs have failed to plausibly allege

---

[5] The Eleventh Circuit Court of Appeals rejected the premise that any response to an inmate's accusation of sexual assault short of divesting a correctional officer of guard duties must be deemed unreasonable. *Doe v. Georgia Dep't of Corrs.*, 248 F. App'x 67, 71 (11th Cir. 2007) (reversing denial of summary judgment where prior sexual assault was reported and investigated because only other option was to divest guard of duties and affirming summary judgment "would empower any prisoner at any time to dictate prison staffing.").

a claim of supervisory liability.  As such, for the reasons set out herein and in Defendants' briefs, Defendants are entitled to qualified immunity.  Defendants' Motion to Dismiss is GRANTED.

**DONE and ORDERED** this 31st day of March, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE
